**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 18, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

JESUS S. BUGARIN,

Defendant–Appellant.

No. 07-2272
(D.C. No. 06-CR-1346-WJ)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

---

Jesús Bugarín challenges the substantive reasonableness of his sentence at the bottom of the applicable advisory United States Sentencing Guidelines ("Guidelines") range for possession with intent to distribute more than 1,000 kilograms of marijuana. Because the district court did not abuse its discretion in imposing that sentence, it is substantively reasonable. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

# I

On March 10, 2006, Bugarín's tractor-trailer was stopped leaving Arizona at the Gallup, New Mexico Port of Entry carrying 1,824 kilograms—in excess of two tons—of marijuana. While the truck's driver, Jose Velazquez, permitted officers to cut the lock and open the trailer, Bugarín fled the scene. A federal grand jury indicted him for possession with intent to distribute more than 1,000 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2. Bugarín was eventually arrested in California and released on bond, which was later revoked at his arraignment hearing. No charges were brought against Velazquez.

Bugarín pleaded guilty to the indicted offense. As part of the plea agreement, the government stipulated that if Bugarín had no more than one criminal history point under the Guidelines, he qualified for relief from the applicable ten-year mandatory minimum sentence under the terms of the "safety valve" statute. See 18 U.S.C. § 3553(f) (limiting applicability of certain statutory minimum sentences for cooperative, nonviolent defendants with little criminal history or leadership role whose crimes did not result in serious injury or death); 21 U.S.C. § 841(b)(1)(A) (setting a mandatory minimum sentence of ten years' imprisonment); U.S.S.G. § 5C1.2 (2006) (incorporating the 18 U.S.C. § 3553(f) criteria into the Guidelines). The government also agreed to a three-level reduction in the applicable offense level based on Bugarín's acceptance of

responsibility, see U.S.S.G. § 3E1.1, and agreed to recommend a sentence at the low end of the advisory Guidelines range.

Bugarín's presentence report ("PSR") calculated his base offense level as 32. § 2D1.1(c)(4) (setting the offense level for drug offenses involving at least 1,000 kilograms, but less than 3,000 kilograms, of marijuana). It recommended a three-level reduction for acceptance of responsibility. § 3E1.1. Further, it recommended a two-level safety valve reduction, §§ 2D1.1(b)(9), 5C1.2(a), for an adjusted base offense level of 27. Bugarín had no criminal history points, so his criminal history fell within Category I. Determining that no downward departure was warranted, the PSR calculated Bugarín's Guidelines range as 70 to 87 months' imprisonment. Ch. 5, Pt. A (Sentencing Table).

Bugarín submitted a sentencing memorandum requesting a downward variance based on his good character, his lack of criminal history, and the harsh collateral consequences of conviction.[1] According to the memorandum and supporting exhibits, as a ten-year-old child in Mexico, Bugarín began working in

---

[1] Although his sentencing memorandum requested a "departure," counsel for Bugarín clarified at the sentencing hearing that he was seeking only a downward variance. See United States v. Trotter, 518 F.3d 773, 774 n.1 (10th Cir. 2008) (noting that a sentencing reduction pursuant to Chapter Four or Five of the Guidelines is a "departure," and a reduction pursuant to 18 U.S.C. § 3553(a) is a "variance"). Accordingly, we construe the memorandum as requesting a downward variance.

In the court below, Bugarín also relied upon the lack of any criminal charges against Velazquez as grounds for a variance. Because he does not rely on this factor on appeal, we do not further discuss it.

the fields to support his family. As a teenager, he immigrated to the United States, where he later married his wife, a United States citizen with whom he has two children. His parents and several siblings also live legally in the United States, and Bugarín was an important mentor to his nephew. Due to Bugarín's absence since his incarceration, his son has become depressed and his family has been unable to pay the mortgage on their home. A large number of friends and family members attest to Bugarín's good character and community involvement.

Because Bugarín is a permanent resident alien, he will be subject to deportation upon his release from prison and may be ineligible for benefits such as early release, certain prison programs, or assignment to a minimum-security prison during his incarceration. His family does not intend to relocate to Mexico, so deportation will result in familial separation. Bugarín had no criminal history prior to this offense, other than a thirteen-year-old nolo contendere plea for tampering with a vehicle.[2] Moreover, after initially fleeing the scene, Bugarín immediately retained counsel and offered to surrender to authorities. After posting bond, he did not flee again but traveled to his New Mexico court appearance. Based on these factors, Bugarín asked the court to impose a sentence of 46 months' imprisonment rather than the 70 to 87 months recommended by the Guidelines.

---

[2] This conviction is too old to result in criminal history points under the Guidelines. U.S.S.G. § 4A1.2(e)(3).

At Bugarín's sentencing hearing, the district court correctly calculated the Guidelines range based on the undisputed offense level and criminal history category calculation in the PSR. In support of a downward variance, Bugarín's counsel reiterated his strong familial ties, his lack of criminal history, his offer to turn himself in, and the substantial collateral consequences following from conviction. In response, the government emphasized the large amount of drugs involved, questioned whether Bugarín was a first-time drug trafficker given that quantity of drugs, and recommended a sentence of 70 months' imprisonment as required by the plea agreement.

After hearing this argument, the district court began by noting that Bugarín's Guidelines range was significantly lower than the otherwise-applicable ten-year minimum due to the operation of the safety valve departure. Considering the 18 U.S.C. § 3553(a) factors, the court explained that one goal at sentencing is to treat similarly situated offenders similarly, § 3553(a)(6), and that the consequences to Bugarín's family, while severe, are not appreciably different from those to any other defendant's family. In addition, the court found that the Guidelines range adequately accounted for the nature and circumstances of the offense and for Bugarín's history and characteristics. § 3553(a)(1). Although the court rejected the government's conjecture that Bugarín was involved in unconvicted prior offenses, it highlighted the quantity of drugs involved, discussed the impacts of drug trafficking, and concluded that "there's . . . a good

reason why the United States Congress has imposed some severe penalties for trafficking in illegal drugs, particularly this kind of quantity." Next, the court considered the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes, § 3553(a)(2), and imposed a sentence of 70 months' imprisonment, the bottom of the Guidelines range.[3] Bugarín appeals.

## II

Bugarín challenges the district court's assessment of his personal characteristics and good character, the effect of his incarceration on his family, the collateral consequences he has faced and will continue to face, and his minimal criminal history. We review the substantive reasonableness of a sentence under a deferential abuse of discretion standard. Gall v. United States, 128 S. Ct. 586, 591 (2007); United States v. Smart, 518 F.3d 800, 805 (10th Cir. 2008). "[A] sentence that is properly calculated under the Guidelines is entitled to a

---

[3] In the course of the hearing, the court also noted that "it would certainly be my just general practice to not impose anything more than the minimum low end of the guideline sentence." Bugarín argues on appeal that adherence to such a practice is an improper restriction upon the district court's sentencing discretion. As Bugarín conceded at oral argument, however, any such restriction imposed only an upper—and not a lower—bound on the sentence he could have received. Because correcting this alleged error would only require the sentencing judge to consider a longer sentence for Bugarín and the government does not appeal the sentence, we will not consider it. See Greenlaw v. United States, 128 S. Ct. 2559, 2564 (2008) ("[A]n appellate court may not alter a judgment to benefit a nonappealing party.").

rebuttable presumption of reasonableness." United States v. Kristl, 437 F.3d

1050, 1054 (10th Cir. 2006) (quotation omitted).  Moreover,

> [w]e may not examine the weight a district court assigns to various
> § 3553(a) factors, and its ultimate assessment of the balance between
> them, as a legal conclusion to be reviewed de novo.  Instead, we
> must "give due deference to the district court's decision that the
> § 3553(a) factors, on a whole, justify the extent of the variance."

Smart, 518 F.3d at 808 (quoting Gall, 128 S. Ct. at 597).

Attempting to rebut the presumption that his within-Guidelines sentence

was substantively reasonable, Bugarín claims that the district court failed to give

adequate weight to his personal characteristics and history, alleging that the court

erroneously required him to show "extraordinary" differences from the run-of-the-

mill offender in order to qualify for a variance.[4]  We disagree.  A district judge

may vary from the Guidelines without finding a particular defendant to be

extraordinary, Smart, 518 F.3d at 808-09, but that is altogether different than

requiring a district court to vary when it finds that a particular defendant's history

and characteristics are wholly ordinary.  Here, the court carefully considered the

evidence of Bugarín's good character as evidenced by his work history and family

---

[4] Bugarín stated throughout his briefs and at oral argument that he raises only a substantive reasonableness challenge to his sentence.  We note that his claim that the court failed to appreciate its discretion to vary from the Guidelines is properly a claim of procedural error.  See Gall, 128 S. Ct. at 597 (treating the Guidelines as mandatory is a procedural error); United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007) (use of a presumption of reasonableness by the district court is procedural error).  Given his clear waiver of any procedural challenge, we consider this argument only as it affects the substantive weight given to the § 3553(a) factors.

ties, but concluded that a sentence at the bottom of the Guidelines range was sufficient to reflect these facts.  Moreover, the court permissibly weighed the need to avoid sentence disparity among similarly situated offenders against a variance on these grounds.  § 3553(a)(6).

Further, Bugarín alleges that the district court gave insufficient weight to the effect of incarceration on his family because that was a disfavored factor upon which to grant a variance under our pre-Gall precedent.  See United States v. Muñoz-Nava, 524 F.3d 1137, 1148 (10th Cir. 2008) ("Under our pre-Gall precedent, consideration of family circumstances [was] disfavored in the § 3553(a) analysis because of the Guidelines.").  Specifically, he argues that "[h]ad the district court been aware that varying from the advisory guidelines based on § 3553(a) because of Mr. Bugarín's family circumstances is not disfavored, perhaps it would have given those circumstances—including his permanent separation from his wife and two children—the consideration they deserved."[5]  Yet, we see nothing in the record indicating that Bugarín is correct that the district court refused to vary based on family circumstances because that factor was disfavored.  Rather, just as with its consideration of Bugarín's character, the district court considered these facts but concluded that they did not warrant a variance.

_____

[5] Again, this is properly a claim of procedural rather than substantive error.

As for the collateral consequences of conviction, Bugarín cites cases showing that district courts have sometimes exercised their discretion to vary downward based on such consequences. See, e.g., United States v. Vigil, 476 F. Supp. 2d 1231, 1315 (D.N.M. 2007); United States v. Pacheco-Soto, 386 F. Supp. 2d 1198, 1204-06 (D.N.M. 2005). These cases are of no moment in our review of the present sentence. A sentencing judge's role is "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Gall, 128 S. Ct. at 598 (quoting Koon v. United States, 518 U.S. 81, 113 (1996)). In that vein, each § 3553(a) factor may warrant a variance in some cases but not in others. This determination is squarely committed to the discretion of the district court. Smart, 518 F.3d at 808. While it is clear that Bugarín's conviction will lead to consequences not faced by a U.S. citizen defendant, the district court noted that these consequences are shared by all noncitizen defendants and did not consider them justification for a variance in this case. That other courts have struck a different balance in different cases with different defendants does not render the lack of variance here an abuse of discretion.

We are also urged to reverse the district court's sentence because it failed to adequately consider the defendant's minimal criminal history. On that point, the district court found that the Guidelines adequately accounted for Bugarín's lack of criminal history because he was in Category I and had additionally

benefitted from the safety valve provision, leaving him subject to an unusually low Guidelines range with respect to his offense of conviction. In other words, the court made an individualized assessment that no variance was necessary for the sentence to adequately represent Bugarín's criminal history. Bugarín argues, however, that the weight the district court assigned to his receipt of safety valve relief was unwarranted. He alleges that the district court applied a non-individualized approach under which no defendant eligible for the safety valve could receive a further downward variance. We do not read any such blanket approach in the sentencing transcript. The district court did consider that many offenders convicted of trafficking more than two tons of marijuana receive substantially higher sentences, and this too is a perfectly permissible consideration. See § 3553(a)(6).

Finally, as the government points out, the district court did not merely discount Bugarín's suggested bases for a downward variance. It also discussed factors that weighed in <u>favor</u> of a Guidelines sentence, including the quantity of drugs at issue, which made the offense a serious one. § 3553(a)(2).

In its consideration of the § 3553(a) factors, the district court weighed each as it saw fit on the facts of this particular case. It determined that this defendant's history and characteristics, when balanced against the nature of the offense and desire for uniformity, did not warrant a downward variance. In so

concluding, the district court did not abuse its discretion, and Bugarín's sentence was thus substantively reasonable.[6]

## III

For the foregoing reasons, we **AFFIRM** Bugarín's sentence.


Entered for the Court


Carlos F. Lucero
Circuit Judge

---

[6] Although we requested supplemental briefing on the issue, we need not decide whether a district court has authority to vary from a within-Guidelines sentence when safety valve relief applies under 18 U.S.C. § 3553(f) because the district court in this case did not vary.